

**SIGNED this 20th day of September, 2010.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-11933-CAG |
| | § | |
| ERIC BENJAMIN ERICKSON, | § | CHAPTER 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| ERIC ERICKSON, | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 09-01135- CAG |
| v. | § | |
| | § | |
| WELLS FARGO NATIONAL | § | |
| ASSOCIATION AS TRUSTEE FOR | § | |
| STRUCTURED ASSETS SECURITIES | § | |
| CORPORATION AMORTIZING | § | |
| RESIDENTIAL COLLATERAL | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES, SERIES 2002-BC8, | § | |
| Defendant and Third-Party Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | |
| SIMONS FAMILY TRUST, GREG HEWITT | § | |
| LAHR, EXECUTOR OF THE ESTATE OF | § | |
| JORENA BENNETT AND BROOKS | § | |
| BENNETT NORDENBERG, | § | |
| Third-Party Defendants. | § | |

1

### ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Came on to be considered the above styled and numbered adversary proceeding and, in particular, the Motion for Partial Summary Judgment filed by Plaintiff, Eric Erickson, on April 15, 2010. (Docket #16). The motion requests that the Court declare a loan and deed of trust assigned to Wells Fargo void and unenforceable. Defendant, Wells Fargo, responded to the Motion for Summary Judgment on May 5, 2010. On July 7, 2010, the Court held a hearing on the motion and took the matter under advisement. The Court has jurisdiction over this proceeding pursuant to 29 U.S.C. § 1334 and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper under 28 U.S.C. § 1408 and § 1409. This matter is referred to this Court under the District's Standing Order of Reference. For the reasons stated herein, the Court finds that the Motion for Partial Summary Judgment should be denied.

### FACTUAL BACKGROUND

The Plaintiff provided few facts to support his Motion for Partial Summary Judgment, presumably, because he believes that the only material fact is that the Plaintiff entered into the Deed of Trust with Option One, the predecessor to Wells Fargo, in order to obtain a home equity loan. (Pl.'s Reply p. 2.) Thus, the Court will rely on the facts supplied by Wells Fargo in its response to the Motion for Partial Summary Judgment, which were not disputed by the Plaintiff in his Reply. This adversary proceeding arises from a home equity note the Plaintiff obtained on February 3, 2000 from Option One Mortgage Corporation ("Option One"), in the amount of $320,000. (Def. Response ¶ 2.) In order to obtain the loan, Option One required the Plaintiff to sign an affidavit stating that the 3.37 acres in Travis County, Texas used to secure the loan constituted his homestead. (Def. Response ¶ 3.) On July 27, 2000, the Plaintiff subdivided the property. (Def. Response ¶ 4.) On May 15, 2001, the Plaintiff borrowed another $400,000 from

2

the Margaret Piper Herman Trust and CA Holdings LLC secured by a Second Lien Deed of Trust on the subdivision. (Def. Response ¶ 5.) In the Second Lien Deed of Trust, the Plaintiff indicated that the subdivision was not his homestead. (Id.) The Plaintiff also indicated that the subdivision was not his homestead in the "Nonhomestead Affidavit and Designation of Homestead" he executed under oath in order to obtain the second lien loan. (Def. Response ¶ 6.) On May 15, 2001, the Plaintiff borrowed $200,000 from the Oliver Pierson and Simons Family Trust, used the subdivision to secure the loan, and again represented that the subdivision was not his homestead. (Def. Response ¶¶ 7, 8.)

On August 9, 2002, the Plaintiff obtained $931,000 through a home equity loan from Option One in order to refinance his existing indebtedness. (Def. Response ¶ 9.) The August 9th home equity loan was secured by a Deed of Trust encumbering Lot 1 of the subdivision and, in order to obtain the loan, the Plaintiff swore that Lot 1 was his homestead. (Def. Response ¶¶ 9, 10.) The proceeds of the $931,000 Option One home equity loan were used to discharge the first, second, and third liens on the subdivision. (Def. Response ¶ 12.) The relevant sections of the Deed of Trust securing the $931,000 Option One home equity loan are:

> 7. **Protection of Lender's Rights in the Property**: If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering into the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.
> 
> Any amounts disbursed by Lender under paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

3

25. **Subrogation**. Any proceeds of the Note used to take up outstanding liens against all or any party of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens, and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

32. **Reimbursement**. To the extent permitted by applicable law and consistent with the Note, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or for payoff demands and, statement of loan balance, fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument, fees arising from a returned or dishonored check, fees to determine whether the Property is occupied, protected, maintained or insured or related purposes, appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument, and all other fees and costs of a similar nature not otherwise prohibited by law. (Def. Ex. 9.)

33. **Clerical Error**. In the event Lender at any time discovers that the Note, any other note secured by the Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contain an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for damages incurred by Borrower that are directly or indirectly caused by any such error.

Portions of paragraph 21 and all of paragraph 22 are missing from the Deed of Trust. Wells Fargo argues that the missing language is the result of a clerical error, which the Plaintiff disputes. (Def. Response p. 18; Pl. Reply p. 5.)

On September 1, 2003, the Plaintiff borrowed $203,000 from the Simons Family Trust secured by another Deed of Trust on Lot 1. (Def. Response ¶ 15.) In the Deed of Trust, the Plaintiff indicated that no part of the property was exempt from forced sale under the laws of

4

Texas. (Id.) The Plaintiff then borrowed $20,000 from Jorena Bennett, secured by a Deed of Trust on Lot 1 on November 1, 2003. (Def. Response ¶ 16.) Again, the Plaintiff stated that no part of the property was exempt from forced sale under Texas law. (Id.) The Plaintiff borrowed $40,000 more from Jorena Bennett secured by a Deed of Trust on Lot 1 on January 15, 2004 and again represented that the property was not exempt from forced sale under Texas law. (Def. Response ¶ 17.) Additionally, Mr. Erickson is the Defendant in another adversary proceeding in this Court, No. 10-01004, where the Plaintiff in that case, Majid Hemmasi, alleges that Erickson borrowed $20,000 from him on October 14, 2004. In deciding to loan money to Erickson, Mr. Hemmasi alleges that he relied on Erickson's representation that the property was not Erickson's homestead; thus, the property would not be exempt from forced sale under Texas law.

Each time the Plaintiff indicated that Lot 1 was not his homestead in order to borrow money; he asserted that he resided at 2002 Arthur Lane, Austin, TX 78704. (Def. Response ¶ 19.) The Plaintiff's mother, however, testified in a deposition that she lives at 2002 Arthur Lane and that the Plaintiff has not lived at that address since becoming an adult. (Id.)

## PROCEDURAL BACKGROUND

When the Plaintiff defaulted on the $931,000 Option One home equity loan in 2005, an *in rem* foreclosure proceeding was commenced against him. To prevent the foreclosure, the Plaintiff filed suit in the 250th District Court in Travis County, Texas and sought a declaratory judgment that the $931,000 home equity loan is invalid. Although the Plaintiff obtained a default judgment against Wells Fargo, it was later set aside by the trial court. On December 11, 2007, the state court entered an Order disposing of several of the Plaintiff's claims. Specifically, the Court found that:

(1) Plaintiff's claim that the note and lien were unenforceable because paragraph 6(D) of the Note provides for personal liability failed as a matter of law.

5

(2) Plaintiff's claim that the note and lien were unenforceable because the principal amount of the note exceeds 80% of fair market value failed as a matter of law.

(3) Plaintiff's claim that the note and lien were unenforceable because Erickson was required to prepay interest on the date of closing so that the debt was not payable in equal monthly payments failed as a matter of law.

(4) Plaintiff's claim that the note and lien were unenforceable because the loan did not say that it may not be accelerated because of a decrease in market value or because of a default on some other debt not secured by a lien on the homestead failed as a matter of law.

(5) A genuine issue of material fact existed as to whether the Wells Fargo note is invalid under the Texas Constitution because the note was used to payoff the underlying second and third lien notes that were allegedly not authorized by § 50(a)(6) and § 50(e) of the Texas Constitution.

(6) Plaintiff's claim that the note and lien were unenforceable because Erickson was not provided with the notice required by § 50(g) of the Texas Constitution failed as a matter of law.

(7) Plaintiff's claim that the note and lien were unenforceable because Option One was not a qualified lender failed as a matter of law.

(8) A genuine issue of material fact existed as to whether the Plaintiff received a copy of all the documents he signed at closing.

(9) Plaintiff's claim that the note and lien were unenforceable because Erickson was not provided with notice of his right of rescission failed as a matter of law.

(10) A genuine issue of material fact as to whether the liens of Margaret Piper Herman

Trust and CA Holdings and Oliver Pierson and Simons Family Trust violated the Texas Constitution.

The state court set the remaining fact issues for jury trial in July 2009; however, on July 9, 2009, the Plaintiff filed for protection under Chapter 7 of the United States Bankruptcy Code. Thus, on September 25, 2009, the lawsuit between the Plaintiff and Wells Fargo was removed to this Court. Prior to removal of the case, the parties stipulated to the following facts: (1) the note and lien was delivered to Wells Fargo; (2) Wells Fargo was the owner and holder of the note and lien; (3) the loan was closed at a title company by a closing agent; (4) Option One furnished the funds in the note and that they were disbursed by a title company and applied in accordance with the Settlement Statement; (5) the proceeds were used to pay off the $400,000 and $200,000 liens; (6) the home equity loan to Plaintiff as evidenced in the note and deed of trust was in default and Plaintiff received notice of the default and failed to cure the default; (7) the indebtedness evidenced by the note and deed of trust was accelerated in accordance with the terms of the note and the law of acceleration for the amount due plus interest; and (8) as of June 19, 2009, the total amount due was $1,371,948.92 plus daily interest of $189.39.

After removal, the Plaintiff filed a Fourth Amended Original Complaint reasserting that the note and lien are unenforceable because Wells Fargo failed to comply with Subsection X of Section 50(a)(6) of Article XVI of the Texas Constitution and that the note and lien are unenforceable because the loan documents failed to comply with the Home Equity Rules. The only new claim asserted in the Fourth Amended Original Complaint is that the liens placed on the Plaintiff's homestead by Simons/Nordenberg violated Article XVI, Section 50 of the Texas Constitution. Wells Fargo answered and asserted a counterclaim against the Plaintiff asking the Court to declare that it is the beneficiary of a valid and enforceable lien against the property

securing the payment of the home equity loan made to Plaintiff, including any reasonable and necessary attorney's fees. Wells Fargo also requests that the Court grant judicial foreclosure of its lien against the property and issuance of an order of sale. In the alternative, Wells Fargo asks the Court to declare and hold that it is entitled to a contractual and equitable subrogation lien against the property and grant judicial foreclosure of Wells Fargo's subrogation lien against the property and issuance of an order of sale.

### PARTIES' CONTENTIONS

In his current Motion for Summary Judgment, the Plaintiff contends that the Deed of Trust violates Article XVI, Section 50(a)(6)(D) of the Texas Constitution because it grants the Trustee the power to sell the property to an individual, without a court order of sale, and only a final Court order may authorize the sale of the property by someone other than the Grantor. Next, the Plaintiff contends that Sections 7 and 32 of the Deed of Trust violate Article XVI, Section 50(6)(C) of the Texas Constitution by making the Borrower personally liable for amounts accruing under the Deed of Trust. Additionally, the Plaintiff requests that the Court grant summary judgment in its favor as to Wells Fargo's Counterclaim. Specifically, the Plaintiff argues that because the sections that would allow the lender to foreclose were "whited out," Wells Fargo does not have the right to foreclose. Additionally, the Plaintiff contends that the Texas Constitution prohibits equitable subrogation to the lien Option One paid off with the loan in question, and because an entity is not entitled to equitable subrogation of amounts paid to itself to retire a preexisting loan.

In response, Wells Fargo first argues that the new claims asserted in the Motion for Partial Summary Judgment are untimely, waived, and barred by the statute of limitations. As to the power of sale granted to the trustee, Wells Fargo argues that the Deed of Trust does not authorize the trustee to proceed to foreclosure sale without first obtaining a court order. Wells

8

Fargo also argues that the deletion of Sections 21 and 22 were clerical errors. Regarding the alleged imposition of personal liability, Wells Fargo points out that the deed of trust states that it is an extension of credit secured by a lien granted and is the type of credit defined by Section 50(a)(6), Article XVI, of the Texas Constitution. Further, that the imposition of costs in Section 32 is qualified by the statement "to the extent permitted by applicable law." Thus, the deed of trust does not impose any requirement for additional debt for which the Borrower would be personally obligated. Additionally, Wells Fargo argues that any violation of the Texas Constitution has been cured. In support of its Counterclaim, Wells Fargo argues that the right of judicial foreclosure is not dependant on authorization in a Deed of Trust. Wells Fargo also argues that the Plaintiff's contention that subrogation is not permitted when the lender making the new loan is paying off its own prior loan is incorrect, and that no such limitation on the doctrine of subrogation exists.

In his Reply, the Plaintiff argues that the Court should revisit the state court order denying his first motion for Summary Judgment, and effectively act as an appellate court in deciding whether the state court order is correct. Additionally, the Plaintiff contends that the claims set forth in the current Motion for Partial Summary Judgment have always been a part of the case. The Plaintiff also argues that the missing language in Sections 21 and 22 is not the result of a clerical error and that the cure provisions of Article XVI, Section 50 do not save the Deed of Trust from violating the Texas Constitution because the cure letters were not timely. Again, the Plaintiff argues that the Deed of Trust imposes personal liability and does not allow for judicial foreclosure. As to the Counterclaim, the Plaintiff again asserts that equitable subrogation is not available to Wells Fargo under the circumstances of this case.

## LEGAL ANALYSIS

Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To the extent facts are undisputed, a Court may resolve a case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Additionally, the Fifth Circuit has stated that "the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 325 (5th Cir. 2004).

To begin, the Court declines to revisit the summary judgment entered by the state court. The issues remaining after the state court entered its summary judgment were set for trial the month the Plaintiff filed bankruptcy. The Court will not allow the Plaintiff to use his bankruptcy as a vehicle to relitigate issues that were fully and fairly litigated in state court. 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.")

The facts in this case are largely undisputed. The only disputed fact apparent from the pleadings is whether or not the "whited out" portions of Section 21 and 22 are the result of a clerical error. For the reasons stated below, the Court finds that whether or not the sections are

missing as the result of a clerical error is non-material. Thus, the Court finds that there are no genuine issues of material fact asserted in the Plaintiff's new summary judgment motion. Next, the Court must consider whether or not the Plaintiff is entitled to summary judgment as a matter of law.

The Court finds that it must deny the Plaintiff's motion as a matter of law because the new claims are not properly before the Court. According to Rule 8 of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to give defendants fair notice of a plaintiff's claim and the grounds upon which the plaintiff relies. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000). Although [p]leadings should be construed liberally, and while plaintiffs need not provide specific facts in support of their allegations, they must include sufficient factual information to provide the grounds on which [their] claim rests. *Erickson v. Pardus*, 551 U.S. 89, 127 (2007) (per curiam) (addressing dismissal under Rule 12(b)(6)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (addressing dismissal under Rule 12(b)(6)); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (addressing dismissal under Rule 12(b)(6)).

Additionally, claims that are not raised in a complaint are not properly before the Court. *Cultrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") Allowing a plaintiff to raise new claims years after the complaint was filed and after the parties have conducted extensive discovery can result in undue delay or undue prejudice to the opposing party. *See Teltschik v. Williams & Jensen, PLLC*, 683 F.Supp.2d 33 (D.D.C. 2010) (citing *Hurlbert v. St. Mary's*

11

*Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (finding that the Plaintiff could not amend the complaint to assert new allegations at the summary judgment stage where the lawsuit had been pending for years and discovery had been completed.)) Also, "a plaintiff may not assert new allegations at the summary judgment stage if such allegations amount to a 'fundamental change' in the nature of plaintiff's claims." *Id.*

After removal from state court, the Court entered a scheduling order requiring the Plaintiff to file an amended complaint in order to comply with the Federal Rules of Civil Procedure. The Court set March 31, 2010 as the discovery deadline and April 15, 2010 as the deadline for filing dispositive motions. The Plaintiff waited until the April 15th deadline to file the current summary judgment motion.

As in the Third Amended Complaint, the Plaintiff's allegations in the Fourth Amended Complaint state that Wells Fargo violated several sections of the Texas Constitution. The Complaint fails to provide any factual information to support the grounds on which the Plaintiff's claims rest, namely, which provisions of the loan, note, and security instrument violate the Constitution. Although the Court recognizes that it has before it a motion for summary judgment, according to both Fifth Circuit and Supreme Court precedent, it is unlikely that the Fourth Amended Complaint could survive a motion to dismiss or a motion for judgment on the pleadings.

In the summary judgment motion, the Plaintiff, for the first time, raises the claims that it is entitled to declaratory judgment because the loan is void and unenforceable because the omissions in paragraphs 21 and 22 impermissibly allow the Trustee to foreclose on the property without a court order, and because sections 7 and 32 of the Deed of Trust violate Article XVI, Section 50(6)(C) of the Texas Constitution by making the Borrower personally liable for

amounts accruing under the Deed of Trust. The Court declines to grant summary judgment in favor of the Plaintiff for the following reasons:

First, the Court agrees with Wells Fargo that the Plaintiff's new claims are untimely, have been waived, and are now barred by the statute of limitations. Although Wells Fargo cites cases discussing waiver in the context of affirmative defenses, the Court finds that the Plaintiff waived his right to assert new claims in his motion for summary judgment by failing to raise them in the Complaint. While the Plaintiff argues that the claims were always a part of his Complaint, the Complaint is so vague the Court cannot tell what it intended to allege and neither could Wells Fargo. By failing to allege any facts that demonstrate he is entitled to relief, the Plaintiff failed to assert any claims in his Complaint; thus, the claims asserted in the motion for summary judgment are new claims. Also, the fact that the Plaintiff did not raise the claims in the original motion for summary judgment lends further support to Wells Fargo's argument that they were raised for the first time in the current motion for summary judgment. Accordingly, the Court finds that the claims based on the omissions in paragraphs 21 and 22 are not properly before this court because they were not raised in the Complaint. Even if Erickson raised the claims in the Fourth Amended Complaint, they would be barred by the statute of limitations because it has been more than seven years after he executed the home equity loan. *See* **Langehennig v. Ameriquest Mortgage Co. (In re Ortegon)**, 398 B.R. 431, 439 (Bankr. W.D.Tex. 2008) (finding that the applicable four-year statute of limitations begins to run at the time the loan is closed); **Rivera v. Countrywide Home Loans, Inc.**, 262 S.W.3d 834 (Tex. App. – Dallas 2008, no pet.) (four-year statute of limitations runs from the date of home equity loan transaction).

Third, allowing the Plaintiff to allege new claims after the discovery deadline has passed would unduly prejudice Wells Fargo. Wells Fargo had no notice that Erickson intended to assert

new claims against it in the Fourth Amended Complaint. In fact, the limited allegations against Wells Fargo in the Fourth Amended Complaint are exactly the same as the allegations against Wells Fargo in the Third Amended Complaint. Thus, the Fourth Amended Complaint failed to give fair notice to Wells Fargo that the Plaintiff intended to assert entirely new claims and that it would need to conduct further discovery. Had the Plaintiff properly claimed that he was entitled to relief because of the omissions in paragraphs 21 and 22, Wells Fargo could have conducted discovery regarding that assertion. Now, the discovery deadline has passed. Therefore, the Court finds that allowing the Plaintiff to assert new claims at this stage in the litigation would unduly prejudice Wells Fargo. Additionally, the new claims asserted in the summary judgment motion impermissibly make fundamental changes to the nature of the Plaintiff's claims because they, for the first time, allege violations of the Texas Constitution based on omissions in entirely different sections of the deed of trust.

Finally, allowing the addition of new claims at this time unduly delays resolution of this litigation. The Plaintiff filed this lawsuit five years ago and the state court entered a summary judgment disposing of all but three of the claims originally asserted by the Plaintiff. The Court will not allow the Plaintiff to add new claims, in another motion for summary judgment, five years later. The Court also sees no reason that the Plaintiff could not have raised the claims in the original motion for summary judgment filed in state court. All of the Plaintiff's new claims are based on omissions and alleged violations on the face of the deed of trust. It appears that the Plaintiff is attempting to engage in piecemeal litigation, and the Court will not allow him to further prolong these proceedings by untimely raising new claims that were apparent on the face of the loan documents from the beginning of this case.

As to Wells Fargo's counterclaim, the Court declines to grant summary judgment in favor of the Plaintiff. First, the right to judicial foreclosure is not dependant on authorization in the deed of trust. Texas Rule 735 explicitly requires judicial foreclosure, regardless of how foreclosure is addressed in a deed of trust. Thus, whether or not paragraphs 21 and 22 were intentionally "whited out" is not dispositive and does not impermissibly convey the Trustee a right to non-judicial foreclosure. Second, the Court agrees with Wells Fargo that the Plaintiff waived his right to argue that Wells Fargo is not entitled to subrogation by failing to answer the counterclaim. In fact, in *Ortegon*, this Court granted a Defendant's counterclaim for equitable subordination because the Plaintiff failed to answer the counterclaim. *See* **In re Ortegon**, 398 B.R. at 437 (referencing Order Granting In Part Defendant's Motion for Summary Judgment and Reserving Ruling In Part on Defendant's Motion for Summary Judgment, docket #56). Thus, on this issue, the Court will *sua sponte* grant summary judgment in favor of Wells Fargo, unless the Plaintiff files a response within 14 days indicating why summary judgment is inappropriate. *See* **Lozano v. Ocwen Federal Bank, FBS**, 489 F.3d 636, 643 (5th Cir. 2007) (requiring 10 days notice before a district court can *sua sponte* dismiss a claim); **Washington v. Resolution Trust Corp.**, 68 F.3d 935, 939 (5th Cir. 1995) (allowing a district court to grant summary judgment *sua sponte*, but only after giving 10 days notice).

Therefore, the only issues remaining for trial, as set forth in the state court's order are: (1) whether the Wells Fargo note is invalid under the Texas Constitution because the note was used to pay off the underlying second and third lien notes that were allegedly not authorized by § 50(a)(6) and § 50(e) of the Texas Constitution; (2) whether the Plaintiff received a copy of all the documents he signed at closing; (3) whether the liens of Margaret Piper Herman Trust and CA Holdings and Oliver Pierson and Simons Family Trust violated the Texas Constitution; (4)

whether the Court should grant Wells Fargo's remaining counterclaims; and (5) whether the Court should grant the counterclaims asserted by the Third-Party Defendants.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Partial Summary Judgment in the above-styled and numbered adversary proceeding shall be, and hereby is, denied.

IT IS FURTHER ORDERED that the Court will *sua sponte* grant summary judgment in favor of Wells Fargo on its equitable subrogation counterclaim, unless the Plaintiff files a response within 14 days.

# # #