**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 20, 2011.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-11933-CAG |
| | § | |
| ERIC BENJAMIN ERICKSON, | § | CHAPTER 7 |
|     Debtor. | § | |

---

| | | |
|---|---|---|
| ERIC ERICKSON, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO NATIONAL | § | ADV. NO. 09-01135- CAG |
| ASSOCIATION AS TRUSTEE FOR | § | |
| STRUCTURED ASSETS SECURITIES | § | |
| CORPORATION AMORTIZING | § | |
| RESIDENTIAL COLLATERAL | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES, SERIES 2002-BC8, | § | |
|     Defendant and Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SIMONS FAMILY TRUST, GREG HEWITT | § | |
| LAHR, EXECUTOR OF THE ESTATE OF | § | |
| JORENA BENNETT AND BROOKS | § | |
| BENNETT NORDENBERG, | § | |
|     Third-Party Defendants. | § | |

## AMENDED MEMORANDUM OPINION ON PLAINTIFF'S COMPLAINT SEEKING TO HAVE THE COURT DECLARE THE LOAN DOCUMENTS OF DEFENDANT AND THIRD-PARTY DEFENDANT VOID AND UNENFORCEABLE

Came on to be considered the above styled and numbered adversary proceeding and, in particular, Plaintiff's Fourth Amended Complaint filed on November 30, 2009 (docket no. 11). The Complaint requests that the Court declare the note, lien, deed of trust, and other loan documents assigned to Wells Fargo National Association as Trustee for Structured Assets Securities Corporation Amortizing Residential Collateral Mortgage Pass-Through Certificates, Series 2002-BC8 ("Wells Fargo") void and unenforceable, and that the Court declare the notes and liens placed on Plaintiff's homestead by Simons Family Trust, Greg Hewitt Lahr, Executor of the Estate of Jorena Bennett and Brooks Bennet Nordenberg ("Third Party Defendants") void and unenforceable. On December 15, 2009, Defendant Wells Fargo responded to Plaintiff's Fourth Amended Complaint and counterclaimed in Defendant Wells Fargo National Association as Trustee's Second Amended Answer, First Amended Counterclaim, and Fourth Amended Third-Party Complaint (docket no. 12). Wells Fargo's Answer asserts that Plaintiff should be estopped from claiming that he did not receive all the closing documents and from claiming that the prior liens were invalid. Furthermore, Wells Fargo's Answer requests that the Court declare that Wells Fargo is equitably and contractually subrogated to all prior liens against any part of Lot 1 or Lot 2 on Circle Ridge Drive that comprise 3.37 acres in Travis County, Texas ("Property") that were paid at the request of Plaintiff from the proceeds of the 2002 Option One home equity loan.

Wells Fargo's counterclaim requests that the Court grant judicial foreclosure of Wells Fargo's lien against the Property and issue an order of sale or, in the event that the Court determines that the home equity loan failed to comply with the Texas Constitution, that Wells

Fargo should be entitled to subrogation or judgment that the principal and interest of the home equity loan shall be forfeited. Defendant's Fourth Amended Third-Party Complaint requested that the Court find that any liens against the Property that may be claimed by Third-Party Defendants are subordinate and inferior in priority to Wells Fargo's lien against the property securing the 2002 Option One home equity loan, and to Wells Fargo's equitable and contractual subrogation liens against the property.

On January 11, 2010, Third-Party Defendants responded in Third-Party Defendant's Answer to Fourth Amended Third-Party Complaint, Answer to Plaintiff's Fourth Amended Original Complaint and First Amended Counterclaim against Plaintiff (docket no. 13). Third-Party Defendants assert that their interests are not subordinate and inferior to Defendant's equitable and contractual subrogation liens against the Property. Third-Party Defendants claim that Plaintiff is not entitled to relief and counterclaim requesting that the Court: (1) declare that the Property is not Plaintiff's homestead; (2) find that Plaintiff committed fraud; (3) find that Plaintiff breached his contract with Third-Party Defendants; and (4) award attorneys' fees to Third-Party Defendants.

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C) and (K). Venue is proper under 28 U.S.C. § 1408 and § 1409. This matter is referred to this Court under the District's Standing Order of Reference. For the reasons stated herein, the Court finds that the Plaintiff's Fourth Amended Complaint should be DENIED; Defendant Wells Fargo National Association as Trustee's Second Amended Answer, First Amended Counterclaim, and Fourth Amended Complaint should be GRANTED; and Third-Party Defendant's Answer to Fourth

Amended Third-Party Complaint, Answer to Plaintiff's Fourth Amended Original Complaint and First Amended Counterclaim against Plaintiff should be PARTIALLY GRANTED.

## FACTUAL BACKGROUND

This adversary proceeding arises from a home equity note the Plaintiff obtained on February 3, 2000, from Option One Mortgage Corporation ("Option One") in the amount of $320,000. In order to obtain the loan, Option One required the Plaintiff to sign an affidavit stating that the 3.37 acres in Travis County, Texas used to secure the loan constituted Plaintiff's homestead. On July 27, 2000, the Plaintiff subdivided the property. On May 15, 2001, the Plaintiff borrowed $400,000 from the Margaret Piper Herman Trust and CA Holdings LLC secured by the Second Lien Deed of Trust on the subdivision. In the Second Lien Deed of Trust, the Plaintiff indicated that the subdivision was not his homestead. The Plaintiff also indicated that the subdivision was not his homestead in the "Nonhomestead Affidavit and Designation of Homestead" he executed under oath in order to obtain the Second Loan On May 15, 2001, the Plaintiff borrowed $200,000 from the Oliver Pierson and Simons Family Trust using the subdivision to secure the loan, and again represented that the subdivision was not his homestead.

On August 9, 2002, the Plaintiff obtained $931,000 through a home equity loan from Option One in order to refinance his existing indebtedness. The August 9th home equity loan was secured by a Deed of Trust encumbering Lot 1 of the subdivision and, in order to obtain the loan, the Plaintiff swore in the Texas Equity Loan Affidavit that Lot 1 was his homestead. The proceeds of the $931,000 Option One home equity loan were used to discharge the first, second, and third liens on the subdivision.

On September 1, 2003, the Plaintiff borrowed $203,000 from the Third-Party Defendants, secured by another Deed of Trust on Lot 1. In the Deed of Trust, the Plaintiff indicated that no

4

part of the property was exempt from forced sale under the laws of Texas. The Plaintiff then borrowed $20,000 from Jorena Bennett, secured by a Deed of Trust on Lot 1 on November 1, 2003. Again, the Plaintiff stated that no part of the property was exempt from forced sale under Texas law. On January 15, 2004, the Plaintiff borrowed an additional $40,000 from Jorena Bennett, secured by a Deed of Trust on Lot 1, and again represented that the property was not exempt from forced sale under Texas law. Additionally, Erickson is the Defendant in another adversary proceeding in this Court, Case No. 10-01004, where the Plaintiff in that case, Majid Hemmasi, alleges that Erickson borrowed $20,000 from him on October 14, 2004. In deciding to loan money to Erickson, Hemmasi alleges that he relied on Erickson's representation that the property was not Erickson's homestead; thus, the property would not be exempt from forced sale under Texas law.

Each time the Plaintiff indicated that Lot 1 was not his homestead in order to borrow money, he asserted that he resided at 2002 Arthur Lane, Austin, TX 78704. The Plaintiff's mother, however, testified in a deposition that she lives at 2002 Arthur Lane and that the Plaintiff has not lived at that address since becoming an adult.

### PROCEDURAL BACKGROUND

When the Plaintiff defaulted on the $931,000 Option One home equity loan in 2005, an *in rem* foreclosure proceeding was commenced. To prevent the foreclosure, the Plaintiff filed suit in the 250th District Court in Travis County, Texas and sought a declaratory judgment that the $931,000 home equity loan is invalid. Although the Plaintiff obtained a default judgment against Wells Fargo, it was later set aside by the trial court. On December 11, 2007, the state court entered an Order disposing of several of the Plaintiff's claims. Specifically, the Court found that:

5

(1)   Plaintiff's claim that the note and lien were unenforceable because paragraph 6(D) of the note provides for personal liability failed as a matter of law.

(2)   Plaintiff's claim that the note and lien were unenforceable because the principal amount of the note exceeds 80% of the fair market value failed as a matter of law.

(3)   Plaintiff's claim that the note and lien were unenforceable because Erickson was required to prepay interest on the date of closing so that the debt was not payable in equal monthly payments failed as a matter of law.

(4)   Plaintiff's claim that the note and lien were unenforceable because the loan did not say that it may not be accelerated because of a decrease in market value or because of a default on some other debt not secured by a lien on the homestead failed as a matter of law.

(5)   A genuine issue of material fact existed as to whether the Wells Fargo note is invalid under the Texas Constitution because the note was used to pay off the underlying second and third lien notes that were allegedly not authorized by Section 50(a)(6) and Section 50(e) of the Texas Constitution.

(6)   Plaintiff's claim that the note and lien were unenforceable because Erickson was not provided with the notice required by Section 50(g) of the Texas Constitution failed as a matter of law.

(7)   Plaintiff's claim that the note and lien were unenforceable because Option One was not a qualified lender failed as a matter of law.

6

  (8) A genuine issue of material fact existed as to whether the Plaintiff received a copy of all the documents he signed at closing.

  (9) Plaintiff's claim that the note and lien were unenforceable because Erickson was not provided with notice of his right of rescission failed as a matter of law.

  (10) A genuine issue of material fact existed as to whether the liens of Margaret Piper Herman Trust and CA Holdings and Oliver Pierson and Simons Family Trust violated the Texas Constitution.

The state court set the remaining fact issues for jury trial in July 2009; however, on July 9, 2009, the Plaintiff filed for protection under Chapter 7 of the Bankruptcy Code. Thus, on September 25, 2009, the lawsuit between the Plaintiff and Wells Fargo was removed to this Court. Prior to removal of the case, the parties stipulated to the following facts: (1) the note and lien were delivered to Wells Fargo; (2) Wells Fargo was the owner and holder of the note and lien; (3) the loan was closed at a title company by a closing agent; (4) Option One furnished the funds in the note and the funds were disbursed by a title company and applied in accordance with the Settlement Statement; (5) the proceeds were used to pay off the $400,000 and $200,000 liens; (6) the home equity loan to Plaintiff as evidenced in the note and deed of trust was in default and Plaintiff received notice of the default and failed to cure the default; (7) the indebtedness evidenced by the note and deed of trust was accelerated in accordance with the terms of the note and the law of acceleration for the amount due plus interest; and (8) as of January 26, 2011, the total amount due was $,618,263.89 plus daily interest of $189.39. After removal, the Plaintiff filed a Fourth Amended Original Complaint reasserting that the note and lien are unenforceable because Wells Fargo failed to comply with Subsection X of Section 50(a)(6) of Article XVI of

7

the Texas Constitution and that the note and lien are unenforceable because the loan documents failed to comply with the Home Equity Rules of the Texas Constitution. The only new claim asserted in the Fourth Amended Original Complaint is that the liens placed on the Plaintiff's homestead by Simons/Nordenberg violated Article XVI, Section 50 of the Texas Constitution. Wells Fargo answered and asserted a counterclaim against the Plaintiff asking the Court to declare that Wells Fargo is the beneficiary of a valid and enforceable lien against the property securing the payment of the home equity loan made to Plaintiff, including any reasonable and necessary attorneys' fees. Wells Fargo also requests that the Court grant judicial foreclosure of its lien against the property and issue of an order of sale. In the alternative, Wells Fargo asks the Court to declare and hold that it is entitled to a contractual and equitable subrogation lien against the property and grant judicial foreclosure of Wells Fargo's subrogation lien against the property and issue an order of sale.

### PARTIES' CONTENTIONS

Plaintiff's Fourth Amended Original Complaint contends that the liens of Margaret Piper Herman Trust and CA Holdings ("Second Lien") and Oliver Pierson and Simons Family Trust ("Third Lien") violated Article XVI, Section 50(a)(6) and Section 50(e) of the Texas Constitution. Plaintiff also contends that the Wells Fargo note is invalid because the note was used to pay off the underlying Second and Third Lien notes that were allegedly not authorized by Article XVI, Section 50(a)(6) and Section 50(e) of the Texas Constitution. Additionally, Plaintiff also contends that Option One violated Article XVI, Section 50(a)(6)(Q)(v) of the Texas Constitution because Option One did not provide Plaintiff with a copy of all the documents he signed at closing of the 2002 refinance.

In response, Wells Fargo argues that Plaintiff should be estopped from claiming that the Second and Third Liens violated the Texas Constitution because Plaintiff signed sworn affidavits that are contrary to his current claims about the status of his homestead on May 15, 2001.

Wells Fargo also argues that Plaintiff is incorrect in his assertion that a borrower may not use the proceeds of a home equity loan to pay off an existing loan that is attempted to be secured by an invalid lien on the homestead. Wells Fargo contends that Plaintiff should be estopped from claiming that he did not receive a copy of all documents signed by him related to the extension of credit as required by the Texas Constitution.

Third-Party Defendants ask the court to enforce Plaintiff's representations that he made on September 1, 2003; November 1, 2003; and January 15, 2004. Plaintiff asserted that the property was not exempt from forced sale in each of those documents. Third-Party Defendants claim that there is no evidence that shows Greg Lahr or any of the Third-Party Defendants knew the property was Plaintiff's homestead at the time the loans were made. Furthermore, Third-Party Defendants claim that they do not have a principal/agent relationship with Lahr and his knowledge could not be imputed to them even if Lahr knew that Plaintiff's statements were false.

## LEGAL ANALYSIS

The Court declines to find that the Second and Third Liens, which were executed on May 15, 2001, are invalid. First, Plaintiff should be estopped from making this claim. A claim of equitable estoppel may be raised if there exists:

> (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) to a party without knowledge, or the means of knowledge, of those facts; (4) with the intention that it should be acted on; and (5) the party to whom it was made must have relied or acted upon it to his prejudice.

***Alco Oil & Gas Corp. v. Concord Oil Co.***, 375 S.W.2d 463, 466 (Tex. Civ. App.—San Antonio 1964), *aff'd*, 387 S.W.2d 635 (Tex. 1965). Plaintiff admitted that he knowingly made a false

representation of facts with the intention that it should be acted on when he signed the affidavits concerning his homestead. Plaintiff stated that his address was 2002 Arthur Lane in the Second Lien Deed of Trust and the Nonhomestead Affidavit and Designation of Homestead that accompanied it (Wells Fargo Bank "WFB" Exhibit 5 & 6). Plaintiff also stated that 2002 Arthur Lane was his address in the Third Lien Deed of Trust and the Nonhomestead Affidavit and Designation of Homestead that accompanied it (WFB Exhibit 7 & 8). In her deposition, Plaintiff's mother said that Plaintiff never lived with her during those periods (WFB Exhibit 16). Option One relied on Plaintiff's representations when it gave Plaintiff the loan. Plaintiff is experienced in business and admitted that he knew that the loans would not be processed if he would have given truthful answers about the location of his homestead in the affidavits.

However, Plaintiff believes the affidavits should not be valid because he alleges that the lender knew or had means to know that the affidavits were false. Plaintiff's theory fails for a number of reasons.

First, an individual should be barred from making an assertion contrary to an affidavit if the individual had the opportunity to verify the contents of the affidavit. *Mazow v. Brazle*, 337 S.W. 2d 734, 737-38 (Tex. Civ. App.—Eastland 1960, *no writ*). Plaintiff admits that he was not forced to sign the affidavit, and that he had the opportunity to read the affidavit if he had chosen to do so. Plaintiff should not be allowed to make an assertion that is contrary to the affidavit.

This analysis is supported by the fact that Wells Fargo was a bona fide purchaser of the note without knowledge of the affidavit's inaccuracy. Article XVI, Section 50(d) of the Texas Constitution states that "[a] purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the

10

affiant." Plaintiff does not contend that Wells Fargo knew the affidavit was not true, nor does Plaintiff contend that the transaction between Option One and Wells Fargo constituted bad faith or fraud. Thus, Wells Fargo has made a *prima facie* showing that it can conclusively rely on the affidavit.

Second, Plaintiff supplied his mother's address to the lenders; his signature was not merely an oversight. The addresses on the affidavits for the Second and Third Liens, which claim the property is not Plaintiff's homestead, state that Plaintiff's mother's address was his homestead. (WFB Exhibits 5, 6, 7, 8, 16). Plaintiff testified that Lahr was only a business contact who would not have had knowledge of Plaintiff's mother's address. Plaintiff also testified that the closing agent was only a business contact that did not have knowledge of Plaintiff's mother's address. Hence, Plaintiff knowingly made the false representation; no other party placed this information in the affidavit for him without his knowledge.

Third, Plaintiff failed to meet his burden to show that any of the lenders had knowledge that his statements were false. For one, Plaintiff failed to prove that Greg Lahr knew the property was his homestead. Plaintiff testified that Lahr knew the property was not Plaintiff's homestead and that Lahr had been told that Plaintiff had concerns about stating that the document was his homestead because Plaintiff knew it was a lie. Allan Craig, who was once Plaintiff's attorney but acted as the closing agent for the Second and Third Liens, corroborated this testimony. The Court finds their testimony unpersuasive. Plaintiff and Craig both have credibility issues. Plaintiff admitted on the stand that he has made false statements under oath. Craig is a convicted felon that has been disbarred, but even more importantly, his recollection of details during his testimony was often confused or fading. For instance, Craig could not recall when the conversation between himself and Lahr took place. The conversation is only relevant

11

to the determination of whether the Second and Third Liens and their accompanying loan documents are valid if the conversation took place when the Second and Third Liens were being processed. While neither witness's credibility is determinative on the issue, their credibility played a factor in the Court's decision.

Fourth, the Court also declines to impute Lahr's alleged knowledge of Plaintiff's homestead status to the Third-Party Defendants. Plaintiff's counsel has stated that many of the people who loaned Plaintiff money were "Lahr's Principals," but Plaintiff has failed to demonstrate that Greg Lahr was an agent of any of the lenders. Plaintiff did not put forth any evidence to show an actual agency between any of the Defendants and Lahr. Additionally, there was no evidence of apparent authority. For purposes of apparent authority, Plaintiff must show evidence of some act by the Defendants that would lead Plaintiff to believe that Lahr was the agent for any of the Defendants. No such evidence was adduced. Lahr received points for facilitating the loans, but Plaintiff did not show that Lahr's compensation made him an agent of the lender. Lahr's actions were similar to that of a broker.

In ***Great Southern Life Ins. Co. v. Williams***, the court held that a loan broker who did not receive compensation from the lender was not an agent of the lender. 135 S.W.2d 241, 247-48 (Tex. Civ. App.—Amarillo, 1939, *writ dism'd judgm't cor*.) The borrower in ***Williams*** found the broker and paid his fees out of the loan money himself. Similarly, Plaintiff went to Lahr and asked for his assistance in finding a lender. There is no indication that the lender was the party responsible for paying Lahr or determining his compensation. Many people are involved in a real estate closing and make money from the transaction without being considered an agent of the lender. For instance, the Fifth Circuit has held that a "closing agent in a loan transaction does not create an agency or employer-employee relationship between the closing agent and lending

12

institution." *United States v. Musgrave*, 444 F.2d 755, 760 (5th Cir. 1971). Similarly, in *Cameron County Sav. Ass'n v. Stewart Title Guar. Co.*, the court held that a title insurance company was not the principal of a title insurance agent for acts beyond issuing title insurance and collecting premiums such that it could be held liable on agency theory. 819 S.W.2d 600, 603-04 (Tex. App.—Corpus Christi, 1991), *writ denied*. Plaintiff did not produce any evidence that shows Lahr told Option One the content of his alleged conversation with Craig. Therefore, even if it could be shown that Lahr knew that the property was Plaintiff's homestead, there is no reason that Lahr's knowledge should be imputed to Option One and the underlying loans would still be valid.

In his second argument, Plaintiff claims that the 2002 Option One refinance is invalid because Option One failed to provide him with all of the documents that he signed at closing. Article XVI, Section 50(a)(6)(Q)(v) of the Texas Constitution states that the lender must "at the time the extension of credit is made, provide the owner of the homestead a copy of all documents signed by the owner related to the extension of credit." The Court finds that Plaintiff should be estopped from making this argument because he signed an affidavit that stated he received all the documents. Plaintiff signed a sworn statement saying that he received all of the documents at closing on August 8, 2002. Plaintiff testified at trial that this affidavit was true. Plaintiff's counsel has attempted to distinguish this statement by stating that Plaintiff received documents that he signed on August 8th but did not receive some of the documents that he signed on August 9th. On the Texas Equity Loan Affidavit (WFB exhibit 10), August 8th has been struck and replaced with August 9th. Plaintiff contends that this was done without his knowledge, and that he actually signed the document on August 8th.

The Court declines to accept Plaintiff's argument that he did not receive all the documents. First, the documents were signed many years before the Plaintiff raised this issue. The amount of time that has passed raises many questions about the ability of any of the parties to remember correctly which documents were received. Plaintiff testified at trial that he did not receive the documents because the copy machine at the title company was broken, but he did not come forward with this story during his deposition prior to this trial. His failure to mention this story from the beginning raises doubts about its accuracy. Second, the Court is not persuaded that the date on the document was fraudulently changed. After considering all the evidence, the Court finds it is more likely that the date was amended to correspond to the correct date, and that Plaintiff's sworn statement prevents him from recovering on this claim.

The Court has previously found that the Second and Third Liens are valid, so Plaintiff's claim that the 2002 Option One refinance is invalid because it relies on these liens does not have merit. The Court also notes that this claim would also fail as a matter of law. Only one section in the Texas Constitution constrains lenders if they attempt to place restrictions on a borrower's use of the home equity loan proceeds. Texas Constitution Article XVI, Section 50(a)(6)(Q)(i) provides that a home equity loan must be made on the condition that "the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt *except* debt secured by the homestead or debt to another lender" (emphasis added). In other words, the Texas Constitution explicitly states that a lender *can* require a borrower to pay off debt secured by the homestead or debt to another lender. The Texas Constitution allows a lender to apply the proceeds of the extension of credit to repay "another lender." Therefore, the disbursal itself cannot be challenged on constitutional grounds. Furthermore, Plaintiff authorized Option One to disburse the funds to pay Third-Party Defendants. Plaintiff's actions implicitly

show that Plaintiff believed the loans were valid at the time of the refinancing. It would be unjust to prevent Option One from recovering money that was used to pay off that debt.

Wells Fargo's counterclaim requests that the Court find that any liens against the Property that may be claimed by Third-Party Defendants are subordinate and inferior in priority to Wells Fargo's lien against the Property that secures the $931,000 home equity loan. Third-Party Defendants did not object to this allegation in their Answer to Fourth Amended Third-Party Complaint. Therefore, the Court holds that these liens are subordinate and inferior in priority to Wells Fargo's lien.

Wells Fargo's counterclaim also requests that the Court find that any liens which may be claimed by Third-Party Defendants are subordinate and inferior in priority to Well Fargo's equitable and contractual subrogation liens against the Property. Third-Party Defendants contested this allegation in their response, but this point is moot because of the Court's rulings in this opinion.

Wells Fargo Bank is entitled to foreclosure of its mortgage lien. The parties have stipulated to the following facts: (1) the note and lien was delivered to Wells Fargo; (2) Wells Fargo was the owner and holder of the note and lien; (3) the home equity loan to Plaintiff as evidenced in the note and deed of trust was in default and Plaintiff received notice of the default and failed to cure the default; (4) the indebtedness evidenced by the note and deed of trust was accelerated in accordance with the terms of the note and the law of acceleration for the amount due plus interest; and (5) as of January 26, 2011, the total amount due was $1,618,263.89 plus daily interest of $189.39. Rule 309 of the Texas Rules of Civil Procedure states that:

> Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to any sheriff or any

>constable within the state of Texas, directing him to seize and sell the same as under execution, in satisfaction of the judgment.

The automatic stay is lifted to allow Wells Fargo to pursue foreclosure in accordance with applicable State law.

Third-Party Defendant's counterclaim requests that the Court enter a judgment declaring that the Property is not Plaintiff's homestead because Plaintiff specifically represented that the Property was not his homestead and renounced any claim thereto in the Deeds of Trust executed on September 1, 2003; November 1, 2003; and January 15, 2004 (WFB exhibits 13, 14, and 15). The Court has found that the Property was Plaintiff's homestead for the purposes of foreclosure in the preceding paragraphs; thus, the Court declines to declare that the Property is not Plaintiff's homestead.

Third-Party Defendants' cause of action for fraud has merit. Each of the Deeds of Trust that Plaintiff signed on September 1, 2003; November 1, 2003; and January 15, 2004 stated:

>[g]rantor(s) expressly represent that the property hereinabove mentioned and conveyed to the Trustee forms no part of any property owned, used or claimed by Grantor(s) as exempted from forced sale under the laws of the State of Texas, and Grantor(s) renounce(s) all and every claim thererto under any such law or laws.

Plaintiff is experienced in business and knew that he could not obtain these loans if he would have given truthful answers about the status of his homestead. Third-Party Defendants relied on Plaintiff's representations and have suffered a loss as a result of Plaintiff's deception. Plaintiff has committed actual fraud by making false representations that induced Third-Party Defendants to loan him money. 37 AMERICAN JURISPRUDENCE FRAUD AND DECEIT §§ 1 & 2 (2d ed. 2011); 37 CORPUS JURIS SECUNDUM FRAUD § 1 (2011). Third-Party Defendants are entitled to damages to the extent of unpaid principal and accrued interest to the date of Plaintiff's petition. These damages are to be paid out of any proceeds that remain after Defendant Wells Fargo's interests have been satisfied from the foreclosure sale.

16

Third-Party Defendants' cause of action for breach of contract does not have merit. This finding is precluded because the Court has found that Plaintiff fraudulently obtained the liens that the Third-Party Defendants hold.

The Court finds that the prevailing parties shall submit motions which state why they should be entitled to attorneys' fees pursuant to Federal Rule of Bankruptcy Procedure § 7054.

In Plaintiff's Closing Argument (docket no. 61), Plaintiff's counsel raised a number of issues that that have already been dismissed by the Court in the Order Denying Plaintiff's Motion for Partial Summary Judgment (docket no. 39). Based on the analysis in that Order, the Court affirms that the 2002 Option One Deed of Trust is not invalid for making the Debtor personally liable on the debt or for allowing the lender to foreclose on the property without a court order.

IT IS THEREFORE ORDERED that Plaintiff's Fourth Amended Complaint is hereby denied and Plaintiff should be granted a take nothing judgment.

IT IS FURTHER ORDERED that the Second and Third Liens are valid; the 2002 Option One loan documents are valid; and Defendant Wells Fargo is entitled to judicially foreclose on the Lot 1 of the Property.

IT IS FURTHER ORDERED that Third-Party Defendants are entitled to recover damages to the extent of unpaid principal and accrued interest to the date of petition on the loan documents that were executed on September 1, 2003; November 1, 2003; and January 15, 2004.

IT IS FURTHER ORDERED that the Defendant and Third Party Defendants be entitled to recover attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54 and Local Rule 7054. All other relief not specifically granted is DENIED. A separate judgment that comports with this Court's memorandum opinion shall be entered separately.